UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
COMMISSION,

Miscellaneous Case No.

Plaintiff,

vs.

**05** MBD **10148**

PENSION FUND OF AMERICA, LC, ET AL.

Defendants.

_____/

FILED
IN CLERKS OFFICE

2005 APR -4  A 11: 36

U.S. DISTRICT COURT
DISTRICT OF MASS.

### NOTICE OF FILING COMPLAINT AND ORDER APPOINTING RECEIVER

NOTICE IS HEREBY GIVEN that, on March 28, 2005, Thomas G. Schultz was appointed as

Receiver for Pension Fund of America L. C., PFA Assurance Group, Ltd., PFA International, Ltd., and

Claren TPA, LLC, in Securities & Exchange Commission v. Pension Fund of America, L.C., et al., Case

No. 05-20863-CIV-MOORE, pending in the United States District Court for the Southern District of

Florida.  Pursuant to 28 U.S.C. Section 754, attached herewith is a copy of the Complaint filed by the

Securities and Exchange Commission in this case along with a certified copy of the Order Appointing

Receiver.

Dated:  April 1, 2005

Respectfully submitted,

**TEW CARDENAS LLP**
Co-counsel for Thomas G. Schultz, Receiver
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131
Telephone:     305.536.1112
Facsimile:      305.536.1116

By: _____
**JEFFREY C. SCHNEIDER, P.A.**
   Florida Bar No. 933244
   E-mail:  jcs@tewlaw.com
**MICHELLE T. VISIEDO-HIDALGO, ESQ.**
   Florida Bar No. 526622
   E-mail: mtv@tewlaw.com

And

**FERRELL SCHULTZ, P.A.**
Co-counsel for Thomas G. Schultz, Receiver
**CARLOS A. NUÑEZ-VIVAS, ESQ.**
  Florida Bar No. 0128181
  E-mail: can@ferrellschultz.com
**DANIEL FOODMAN, ESQ.**
  Florida Bar No. 0337160
  E-mail: dfoodman@ferrellschultz.com
  201 South Biscayne Boulevard
  Miami, Florida 33131
  Telephone:    305.371.8585
  Facsimile:    305.371.5732

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Filing Complaint and

Order Appointing Receiver were served upon the following persons by U. S. Mail this 1st day of April, 2005:

Teresa J. Verges, Esq. & Roger Cruz, Esq., United States Securities and Exchange Commission, 801 Brickell

Avenue, Suite 1800, Miami, Florida 33131, and Richard E. Brodsky, Esq., Brodsky & Mullin, PA., 3059

Grand Avenue, Suite 340, Miami, Florida 33133.

Michelle T. Visiedo-Hidalgo

@PFDesktop\::ODMA/MHODMA/MIAMI;432699;1

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-20863

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,



MAGISTRATE JUDGE
O'SULLIVAN

v.

PENSION FUND OF AMERICA L.C.,
PFA ASSURANCE GROUP, LTD.,
PFA INTERNATIONAL, LTD.,
CLAREN TPA, LLC,
LUIS M. CORNIDE, and
ROBERT DE LA RIVA,

Defendants.
_____/

## ORDER APPOINTING RECEIVER

Plaintiff Securities and Exchange Commission ("Commission") has filed an emergency

motion for the appointment of a Receiver over Defendants Pension Fund of America L.C.

("Pension Fund"), PFA Assurance Group, Ltd. ("PFA Assurance"), PFA International, Ltd.

("PFA International"), and Claren TPA, LLC ("Claren") (collectively "the Defendants"), with

full and exclusive power, duty and authority to: administer and manage the business affairs, funds,

assets, choses in action and any other property of the Defendants; marshal and safeguard all of the

assets of the Defendants; and take whatever actions are necessary for the protection of the investors.

The Commission has made a sufficient and proper showing in support of the relief requested

by evidence demonstrating a _prima facie_ case of violations of the federal securities laws by the

Defendants.



IT IS THEREFORE ORDERED AND ADJUDGED that

>THOMAS SCHULTZ
>Ferrel Schultz
>201 S Biscayne Blvd, Fl 34
>Miami, FL 33131-4332
>(305) 371-8585

is hereby appointed the Receiver over the Defendants, their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:

1.      Take immediate possession of all property, assets and estates of every kind of the Defendants, whatsoever and wheresoever located belonging to or in the possession of the Defendants, including but not limited to all offices maintained by the Defendants (including all buildings, structures and other property located at 242 N.W. 42nd Ave., Miami, Florida 33126), rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the Defendants wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.      Investigate the manner in which the affairs of the Defendants were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Defendants and their investors and other creditors, as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors, including, their officers, directors, employees, affiliates, subsidiaries or any persons acting in concert or participation with them, or against any transfers of monies or other proceeds directly or indirectly traceable from

2

investors; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et. seq. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

3.     Present to this Court a report reflecting the existence and value of the assets of the Defendants and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Defendants;

4.     Appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business of the Defendants, and exercising the power granted by this Order, subject to approval by this Court at the time the Receiver accounts to the Court for such expenditures and compensation;

5.     Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshals Service or a private security firm;

6.     Defend, compromise or settle legal actions, including the instant proceeding, in which any or all of the Defendants, or the Receiver are a party, commenced either prior to or subsequent to this Order, with authorization of this Court; except, however, in actions where any or all of the Defendants are a nominal party, as in certain foreclosure actions where the action does not effect a claim against or adversely affect the assets of any of the Defendants, the Receiver may file appropriate pleadings in the Receiver's discretion. The Receiver may waive any attorney-client or other privilege held by the Defendants;

3

7.    Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of any of the Defendants and, upon, order of this Court, of any of their subsidiaries or affiliates; provided that the Receiver deems it necessary;

8.    Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary and advisable in discharging the Receiver's duties;

9.    Have access to and review all mail of the Defendants and the mail of Defendants Luis M. Cornide and Robert de la Riva ("de la Riva") (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office or address, including 242 N.W. 42nd Avenue, Miami, Florida 33126. All mail addressed to Cornide and de la Riva that is opened by the Receiver and, upon inspection, is determined by the Receiver to be personal or attorney-client privileged, shall be promptly delivered to the addressee and the Receiver shall not retain any copy.

**IT IS FURTHER ORDERED AND ADJUDGED** that, in connection with the appointment of the Receiver provided for above:

10.    The Defendants and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of the Defendants shall deliver forthwith upon demand such property, monies, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions

4

which have possession, custody or control of any assets or funds in the name of or for the benefit of the Defendants;

11.    All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, the Defendants shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

12.    Unless authorized by the Receiver, the Defendants and their principals shall take no action, nor purport to take any action, in the name of or on behalf of the Defendants;

13.    The Defendants, and their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Receiver, including, if deemed necessary by the Receiver, appear for deposition testimony and produce documents upon two (2) business days' notice (by facsimile), while the Commission's request for a Preliminary Injunction is pending.   The Defendants and their principals, and respective officers, agents, employees, attorneys, and attorneys-in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

14.    The Receiver, and any counsel whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by the Defendants; said amount or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval of the Court;

5

15.     During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined from filing a petition for relief under the United States Bankruptcy Code without prior permission from this Court, or from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of the Defendants;

16.     The Receiver is fully authorized to proceed with any filing the Receiver may deem appropriate under the Bankruptcy Code as to the Defendants;

17.     Title to all property, real or personal, all contracts, rights of action and all books and records of the Defendants and their principals, wherever located within or without this state, is vested by operation of law in the Receiver;

18.     Upon request by the Receiver, any company providing telephone services to the Defendants shall provide a reference of calls from the number presently assigned to the Defendants to any such number designated by the Receiver or perform any other changes necessary to the conduct of the receivership;

19.     Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

20.     The United States Postal Service is directed to provide any information requested by the Receiver regarding the Defendants, and to handle future deliveries of the mail of the Defendants as directed by the Receiver;

21.     No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help

6

whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

22. No bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence, the Receiver shall not be liable for any loss or damage incurred by the Defendants or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities;

23. Service of this Order shall be sufficient if made upon the Defendants and their principals by facsimile or overnight courier;

24. In the event that the Receiver discovers that funds of persons who have invested in the Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds;

25. This Court shall retain jurisdiction of this matter for all purposes.

**DONE AND ORDERED** this 28th day of March, 2005, at Key West, Florida.

UNITED STATES DISTRICT JUDGE

Copies to:

Roger Cruz, Esq.
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
**Counsel for Securities and Exchange Commission**
Phone: (305) 982-6398
Fax: (305) 536-4154
e-mail: cruzr@sec.gov

7



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

SECURITIES AND EXCHANGE COMMISSION,⁣ )
⁣⁣⁣ )
⁣⁣⁣⁣⁣⁣⁣⁣ Plaintiff, )
⁣⁣⁣ )
v. )
⁣⁣⁣ )
PENSION FUND OF AMERICA L.C., )
PFA ASSURANCE GROUP, LTD., )
PFA INTERNATIONAL, LTD., )
CLAREN TPA, LLC )
LUIS M. CORNIDE, and )
ROBERT DE LA RIVA, )
⁣⁣⁣ )
⁣⁣⁣⁣⁣⁣⁣⁣ Defendants. )
⁣⁣⁣ )
⁣⁣⁣ )
_____ )

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Securities and Exchange Commission alleges that:

### INTRODUCTION

1.⁣⁣⁣⁣ The Commission brings this action to enjoin the Defendants from continuing to defraud investors through the sale of so-called retirement trust plans issued by two companies, Pension Fund of America L.C. ("Pension Fund") and PFA Assurance Group, Ltd. ("PFA Assurance"), in violation of the antifraud provisions of the federal securities laws. From at least 1999 to the present, Pension Fund, its affiliated companies, and their two principals have raised approximately $127 million from more than 3,400 investors by offering "retirement trust plans" that combine life insurance and investments in mutual funds issued by well-known U.S. mutual fund companies.

2.      The Defendants have made numerous material misrepresentations and omissions in connection with the sale of these plans. First, they have failed to disclose that they are using as much as 90% of investor funds to pay exorbitant commissions to sales agents, administrative fees and other costs of Pension Fund and PFA Assurance. Second, the Defendants have failed to disclose all pertinent mutual fund fees. Third, the Defendants have misrepresented their relationships with major financial institutions and broker-dealers, falsely holding the institutions out as trustees or custodians for investors' funds. Fourth, they have misrepresented the nature and value of the life insurance policies. Finally, the individual Defendants, Luis M. Cornide and Robert de la Riva, have misappropriated at least $15 million of investor funds.

3.      In addition, the Commission believes the Defendants are currently selling or transferring investor assets to others outside of the United States and therefore outside the jurisdiction of this Court. Unless immediately restrained and enjoined, the Defendants will continue to defraud investors and place investor funds at serious risk of diversion and theft. Accordingly, the Commission seeks emergency relief against Defendants, including a temporary restraining order, a preliminary injunction, an order freezing assets, and the appointment of a receiver.

## DEFENDANTS

4.      Pension Fund is a Florida limited liability company formed in June 1999, with its principal office in Coral Gables, Florida. Pension Fund is the issuer of the retirement trust plans and also serves as adviser and manager of the plans.

5.      PFA Assurance is a Cayman Islands corporation formed in 2002, with its principal place of business in Coral Gables, Florida. Since early 2003, PFA Assurance has issued

the insurance component of the retirement trust plans. PFA Assurance has also recently assumed the role of issuer, and serves as adviser and manager of the plans.

6.      PFA International, Ltd. ("PFA International") is a Cayman Islands corporation formed in 2003, with its principal place of business in Coral Gables, Florida.  PFA International is a shell company Pension Fund and PFA Assurance use to pay their sales agents.

7.      Claren TPA, LLC ("Claren") is a Florida limited liability corporation formed in April 2004, with its principal place of business in Coral Gables, Florida.  Claren purportedly serves as third-party administrator for the investment plans Pension Fund and PFA Assurance issue.

8.      Luis M. Cornide ("Cornide") is 39 years old and resides in Coral Gables, Florida. Cornide is President of Pension Fund and serves as manager of Claren. He is also President of PFA Assurance and Chairman of PFA International.

9.      Robert de la Riva ("de la Riva") is 31 years old and resides in Coral Gables, Florida. He is Senior Vice President of Pension Fund and serves as manager of Claren. He is also a director of PFA Assurance and Secretary of PFA International.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) and 78aa; and Section 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-14.

11.      Venue is proper in the Southern District of Florida because many of the Defendants' acts and transactions constituting violations of the Securities Act, the Exchange Act,

and the Advisers Act occurred in the Southern District of Florida. In addition, the principal places of businesses of all four company Defendants are in the Southern District of Florida. Cornide and de la Riva also reside in the Southern District of Florida.

12.    The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## PFA's FRAUDULENT OFFERING

### A. Overview of the Investment Plans

13.    Since at least 1999, Pension Fund has offered investment plans that purport to have both investment and insurance components. Through sales materials and oral presentations, Pension Fund and later PFA Assurance have promoted their investment products as retirement trusts and described them as safer investments and more profitable than similar products because they invest them through U.S. banks and broker-dealers that purportedly serve as trustees or custodians for the investors' funds.

14.    Pension Fund and PFA Assurance solicit investors, most of whom reside in Central or South America, through a network of more than 500 sales agents who also primarily reside in those regions. Cornide and de la Riva travel throughout Latin America to train sales agents and the "regional directors" that supervise the agents in their respective countries. Cornide and de la Riva also meet with prospective investors abroad and in Miami, Florida, and participate in drafting sales and offering materials. In 2003, Cornide and de la Riva created a Cayman Islands shell company, PFA International, purportedly to operate the plans' sales and marketing operations.

15.     From at least 1999 until approximately 2003, Pension Fund served as the issuer of and adviser to its investment plans. It also hired, trained and compensated its network of sales agents. In 2002, Cornide and de la Riva formed PFA Assurance, a Cayman Islands shell company with no employees, that became the issuer of the insurance component of Pension Fund's retirement trust plans in early 2003.

16.     Currently, Pension Fund and PFA Assurance offer two retirement trust plans: The Liberty Trust, which is a monthly or annual contribution plan, and The Capital Trust, which is a one-time contribution plan. Approximately 85 percent of all investors choose The Liberty Trust. The Liberty Trust requires annual contributions of between $1,000 and $20,000 for ten to fifteen years, and imposes significant early withdrawal penalties – for example, 100 percent for the first two years and declining thereafter for the entire term of the plan. The Capital Trust is a ten-year plan that requires a minimum one-time contribution of $10,000. The investment component of both plans provides investors with a choice of eight mutual funds offered by well-known U.S. mutual fund companies, such as Fidelity, Legg Mason, Janus and Goldman Sachs.

17.     Pension Fund and PFA Assurance, at the direction of Cornide and de la Riva, select the mutual funds used in the investment plans. They provide minimal information to prospective investors about the mutual funds, and no information about fund costs or load fees. Neither the two companies nor the financial institutions and broker-dealers with which they have been affiliated provide investors with fund prospectuses.

18.     Both plans also include a minimum of $15,000 of fixed-term life insurance for a fifteen-year term. Until the incorporation of PFA Assurance, Pension Fund used several offshore companies to issue the life insurance that was bundled with the investments. Beginning in 2003, PFA Assurance has been the sole insurance issuer.

19.    Since at least 1999, Pension Fund and later PFA Assurance have purportedly affiliated themselves with several U.S. banks and broker-dealers in connection with the investment component of their plans, including SunTrust Bank, Lehman Brothers, Merrill Lynch, Raymond James Financial Services, and HSBC Bank USA. Pension Fund touts its relationship with these financial institutions as one of the main selling points for its plans and includes information about these companies in presentations and marketing materials to prospective investors. The fact that the investment vehicle is a "trust" is important to investors because it connotes that their money is safe and that a major financial institution backs their investment.

### B. Offering Materials

20.    The only documents describing the investment plans that potential investors receive from the Defendants before purchasing the plans are brochures, available in Spanish and Portuguese, generally describing the products, and an "Investor Application."

21.    The brochures promote the two plans as "retirement trust plans" administered by trustees at U.S. banks and broker-dealers. Current versions of the brochures contain HSBC's logo, pictures of HSBC's corporate headquarters and corporate information, and statements such as "Your money will be in the best of hands: HSBC Bank, USA." The Liberty Trust offering materials also tout the security of the investment plans.

22.    The Investor Application includes a list of eight mutual funds for the investor to choose from. Previous versions of this document contained a section, complete with checkmark boxes, for investors to select which financial institution they prefer to serve as trustee or custodian of their investment. Investors who decide to invest in one of the plans complete and

sign the Investor Application and mail – or personally deliver – the Application with a check or credit card payment.

### C. Misrepresentations and Omissions Relating to the Investment Plans

#### *1. Undisclosed Massive Commissions, Fees and Costs*

23.    The Defendants have failed to disclose to investors that their entire investment program is a sham designed to enrich themselves and their sales agents.  Instead of investing money as they promise, the Defendants' accounting documents show they use as much as *90 percent* of investors' funds to pay sales agents' commissions, administrative fees, and other costs.

24.    For example, the accounting documents show Pension Fund and PFA Assurance are charging Liberty Trust investors average fees and costs of 80 percent on first-year investments, leaving only about ten percent of investors' funds actually used to purchase mutual funds and nine percent for insurance.  In some cases, the Defendants invested *nothing*, instead using 100 percent of investors' funds to pay sales agents' commissions and other fees and costs.  The Defendants use PFA International to pay the sales agents these exorbitant commissions.

25.    Documents pertaining to the one-time contribution plan, The Capital Plan, show the Defendants charge investors average fees of 30 percent on each investment – 15 percent as commissions and 15 percent as net profit to Pension Fund or PFA Assurance.

26.    Neither the brochures nor the Investor Application – the documents investors see before investing – disclose these outrageous commissions, fees, and costs.  After investors complete and execute the Investor Application and send in their first payment, they receive a "Guide to Plan Provisions" ("Guide").  The Guide contains more information about the retirement trust plans' investment and insurance components, but in contrast to the pre-purchase

marketing materials, this publication is in English.   Although more detailed than the Investor

Application, the only fee or commission disclosure the Guide makes is contained in a "Cost of

the Plan" subsection, which states:

> The costs and expenses, designed to protect your investment and insure Participants' life
> may be as high as ---% of contributions. They include the following items:
>
> a.  Costs of life insurance, permanent disability and accidental death, which include
>     expenses allocated herein.   Such expenses fluctuate depending on the age and
>     health of the participant.
> b.  Administrative costs during the life of the Plan.
> c.  Sales commissions and brokerage fees.
> d.  Record keeping costs during the life of the Plan ("Record Keeping Costs").
> e.  Trustee fees, expenses and certain indemnities to the Trustee (as provided in the
>     Master Trust Agreement).
> f.  Costs of mutual funds units.
> g.  Reserves to keep your plan if you do not choose to make subsequent
>     contributions.

27.     Previous versions of this section state that the Defendants will use up to 80

percent of an investor's initial contribution, depending upon the plan chosen, to purchase

insurance and to pay various plan expenses.   However, none of the versions of the Guide

specifically disclose the excessive amount of commissions or the administrative expenses the

Defendants charge investors.  Nor have any versions of the Guide provided a specific breakdown

of other costs.

28.     The Defendants also deceive investors into making subsequent plan contributions

by creating and mailing false annual statements which purport to show an investor's total

investment amount or final balance.   While the annual statements show an investor's "final

balance" or "total contribution," these figures only reflect the total initial investment, without

subtracting the fees or commissions that the Defendants in fact never invested. By not disclosing

the deducted commissions, fees, and costs in the annual statements, the Defendants are vastly

overstating the actual amounts of investors' holdings.

## 2. *Misrepresentations about Relationships with Banks and Broker-Dealers*

29.    Pension Fund and PFA Assurance have marketed as one of the more appealing aspects of their investment program their supposed affiliations with numerous banks and brokerage houses, who allegedly act as trustees or custodians of investors' accounts.

30.    For example, the Defendants' current brochure states that some important reasons to invest are "total safety, because the money deposits are received directly by HSBC Bank, USA . . . total protection, because the Liberty Trust Plan is backed up by a legal instrument called a trust . . . your investment will always be protected."

31.    Current Investor Applications refer to HSBC as a plan trustee, and Defendants' website referred to Raymond James as "custodial bank." When the Defendants maintained relationships with Lehman Brothers and Merrill Lynch, the client applications referred to these institutions as "trustees" and "trustee banks."

32.    However, these representations are false. None of the financial institutions has ever served as a trustee or custodian for investors. With the exception of SunTrust, none of these institutions has ever had a direct agreement or any contact with a fund investor. Defendants merely opened standard bank or brokerage accounts in the name of Pension Fund, through which they pooled investor money to purchase shares in mutual funds. The Defendants have never opened individual accounts in investors' names, and investors do not receive statements or confirmations from the financial institutions.

33.    To perpetuate their lies about their relationships with financial institutions, the Defendants forged investment certificates with counterfeit seals and issued them from Pension Fund's offices in Coral Gables, Florida. None of the financial institutions authorized Pension Fund or the other Defendants to use their trademarks. The unauthorized certificates were printed

from templates the Defendants created, and bear the names of Merrill Lynch, Raymond James, and Lehman Brothers.

34.    The legend on top of most of the certificates state "Pension Fund of America," but recently issued certificates state "PFA Assurance Group, Ltd." The certificates contain minimal information, setting forth the amount invested, the mutual fund selection and the plan's insurance company.

35.    For investors that selected Lehman, Defendants sent certificates containing the language "Lehman Brothers as Trustee" and an official-looking Lehman stamp which is stamped over the signature of an "Authorized Official" (presumably from Lehman). The certificates also include similar seals next to the Authorized Official signature referring to Merrill Lynch and Raymond James as "custodian." The Defendants currently send certificates to investors selecting HSBC which state "HSBC Bank, USA as trustee." All of these stamps, signatures, and certificates are false because no such affiliation exists between these institutions and any of the Defendants.

### 3. Omissions about Mutual Fund Fees

36.    The Defendants also fail to disclose to investors that the banks and broker-dealers charge undisclosed front-end load fees – a form of sales-agent commission – of up to 6.5 percent per mutual fund. They also have failed to disclose to investors that they had a choice in obtaining mutual fund shares at significantly lower costs (many at "no load") compared to the high-commission mutual fund shares that the Defendants purchased on investors' behalf.

### 4. Misrepresentations about Life Insurance Policies

37.    The Defendants also tout term life-insurance policies as a component of their plans. Regardless of what insurance they purchase for investors or how they label the insurance

products, the insurance benefit precipitously declines over the life of the plan. The longer the investment is held, the lower the insurance benefit. The offering materials and the Investor Application only reflect the overall insurance benefit and do not disclose the fact that this amount of coverage will decline over time. The Defendants do not provide investors with a copy of the individual insurance policies.

### 5. Cornide and de la Riva's Misappropriation and Misuse of Investor Funds

38.    Documents obtained from the Defendants show that from 1999 to the present, Cornide and de la Riva received payments from Pension Fund and PFA Assurance totaling $15 million, or about 35 percent of the $43 million in revenue the companies recorded for the same period. Company ledgers show Cornide and de la Riva received equal payments totaling $7.5 million each.

39.    Between 2001 and 2004, Cornide purchased three homes in Coral Gables, and one home in the Florida Keys, valued at $3 million. De la Riva purchased two homes in Coral Gables valued at $2 million. Documents also show that Cornide and de la Riva purchased Pension Fund's Coral Gables office building in the name of Shadowcreek Investments, LLC, an entity Cornide and de la Riva own.

### CLAIMS FOR RELIEF

### COUNT I

### Fraud In Violation Of Section 17(a)(1) Of The Securities Act

### (Against all Defendants)

40.    The Commission repeats and realleges paragraphs 1 through 39 of its Complaint.

41.    The Defendants have directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer

or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

42. By reason of the foregoing, the Defendants have directly and indirectly, violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a).

## COUNT II

### Fraud In Violation Of Sections 17(a)(2) And 17(a)(3) Of The Securities Act

### (Against all Defendants)

43. The Commission repeats and realleges paragraphs 1 through 39 of its Complaint.

44. The Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, have: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

45. By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

12

## COUNT III

### Fraud In Violation Of Section 10(b) Of The Exchange Act
### And Rule 10b-5 Promulgated Thereunder

#### (Against all Defendants)

46.    The Commission repeats and realleges paragraphs 1 through 39 of its Complaint.

47.    The Defendants have directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

48.    By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.

## COUNT IV

### Unregistered Broker-Dealer in Violation of
### Section 15(a)(1) of the Exchange Act

#### (Against Defendants Cornide and de la Riva)

49.    The Commission repeats and realleges paragraphs 1 through 39 of its Complaint.

50.    Defendants Cornide and de la Riva, directly and indirectly, by use of the mails or any means or instrumentality of interstate commerce, while acting as brokers or dealers engaged in the business of effecting transactions in securities for the accounts of others, have been

13

effecting transactions in securities, or induced or attempted to induce the purchase or sale of securities, without registering as broker-dealers in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

51.    By reason of the foregoing, Defendants Cornide and de la Riva, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

## COUNT V

### Violations of Sections 206(1) and 206(2) of the Advisers Act

### (Against Defendants Pension Fund, PFA Assurance, Cornide, and de la Riva)

52.    The Commission repeats and realleges paragraphs 1 through 39 of its Complaint.

53.    Defendants Pension Fund, PFA Assurance, Cornide, and de la Riva, as investment advisers, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce: (1) employed devices, schemes or artifices to defraud clients or prospective clients; and (2) engaged in transactions, practices or courses of business which operated as a fraud or deceit upon clients or prospective clients.

54.    Defendants Pension Fund, PFA Assurance, Cornide, and de la Riva knew or were reckless or negligent in not knowing that the alleged representations and omissions were false and misleading.

55.    By reason of the foregoing, Defendants Pension Fund, PFA Assurance, Cornide, and de la Riva have violated and, unless enjoined, will continue to violate Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

14

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that the Defendants have committed the violations of the federal securities laws alleged herein.

### II.

### Temporary Restraining Order, Preliminary Injunction and Permanent Injunction

Issue a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction, restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b); Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a)(1); and Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. § 80b-6, as indicated above.

### III.

### Asset Freeze and Sworn Accountings

Issue an Order freezing the assets of all Defendants until further Order of the Court and requiring the Defendants to file with this Court, within five business days, sworn written accountings.

## IV.

### Appointment of a Receiver

Issue an Order appointing a receiver over all assets held in the name of Defendants Pension Fund, PFA Assurance, PFA International, and Claren to (1) preserve the status quo, (2) ascertain the financial condition of each of these Defendant entities, (3) prevent further dissipation of the property and assets of each of these Defendant entities, to prevent loss, damage and injury to investors, (4) preserve the books, records and documents of each of these Defendant entities, and (5) be available to respond to investor inquiries.

## V.

### Records Preservation and Expedited Discovery

Issue an Order requiring the Defendants to preserve any records related to the subject matter of this lawsuit that are in their custody or possession or subject to their control, and to respond to discovery on an expedited basis.

## VI.

### Disgorgement

Issue an Order directing the Defendants to disgorge all profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

## VII.

### Penalties

Issue an Order directing all Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); and Section 209(e) of the Advisers Act, 15 U.S.C. §§ 80b-9(e).

## VIII.

### Repatriation of Investor Proceeds

Issue an Order requiring the Defendants to take such steps as are necessary to repatriate to the territory of the United States all funds and assets of investors described in the Commission's Complaint in this action which are held by them or are under their direct or indirect control, and deposit such funds into the registry of the United States District Court for the Southern District of Florida, and provide the Commission and the Court a written description of the funds and assets so repatriated.

## IX.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## X.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

March 28, 2005

By: _____
Roger Cruz
Senior Trial Counsel
Florida Bar No.157971
Direct Dial: (305) 982-6379

Teresa J. Verges
Assistant Regional Director
Florida Bar No. 0997651

Direct Dial: (305) 982-6384

Yolanda Gonzalez
Branch Chief
Florida Bar No. 0107042
Direct Dial: (305) 982-6390

Jason R. Berkowitz
Senior Counsel
Pennsylvania Bar No. 87775
Direct Dial: (305) 982-6309

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154